Filed 3/30/26  Pulido v. Froelich CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KEVIN PULIDO,<br><br>Appellant,<br><br>v.<br><br>TARAH L. FROELICH,<br><br>Respondent. | D084988<br><br><br><br>(Super. Ct. No. 24FL006303C) |

APPEAL from orders of the Superior Court of San Diego County, Leah Boucek, Commissioner.  Affirmed.

Kevin Pulido, in pro. per., for Appellant.

Tarah L. Froelich, in pro. per, for Respondent.

## I.  INTRODUCTION

Appellant Kevin Pulido (Father) appeals the trial court's orders granting respondent Tarah Froelich (Mother) a domestic violence restraining order (DVRO) and denying Father's request for a DVRO, awarding Mother sole legal and physical custody of their minor child, and ordering Father to

pay child support and attorney fees.  Representing himself on appeal, Father contends (1) the orders are not supported by substantial evidence because they are based on Mother's allegedly perjured testimony, and (2) the trial court erred by excluding a video that Father secretly recorded of Mother in which she allegedly admitted she physically abused Father.  On the appellate record before us, Father has not met his burden as the appellant to demonstrate reversible error.  Accordingly, we affirm the orders.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Father and Mother began dating in 2022 and had a child (Child) together in January 2023.  Father and Mother never married.

On June 10, 2024, Father filed a petition seeking equal custody of Child.  That same day, Mother applied for and was granted a temporary domestic violence restraining order against Father.  Three days later, Father applied for and was granted a temporary domestic violence restraining order against Mother.  The court scheduled the pending matters for an evidentiary hearing.

Before the hearing, Mother and Father each submitted declarations and evidence in support of their requests.

Mother's declaration discussed text messages from Father demonstrating alleged abuse.[1]  The declaration quoted from certain of the messages in which Father (1) made disparaging comments of a sexual nature; (2) acknowledged accessing Mother's online accounts and going through her phone; (3) threatened to release Mother's sensitive information; (4) threatened to commit suicide in a manner that Mother would hear; and (5) claimed to have evicted Mother and Child from their shared residence.

---

[1]     The messages were lodged with the trial court but are not in the appellate record.

The declaration also discussed a "recording device that [Mother] discovered at the residence" that "included recordings of [her] which [she] did not consent to."

Father's declaration accused Mother of (1) committing "transgressions" by communicating with ex-boyfriends and other men; (2) drinking alcohol and consuming marijuana while pregnant with Child; (3) threatening and physically abusing Father; (4) kidnapping Child and threatening to take him away from Father; (5) belittling Father; and (6) being jealous of Father's other commitments. The declaration described an incident in which Mother allegedly threw a "metal wallet" across the room, endangering Child. Father admitted in his declaration that, "for [his] safety," he secretly recorded Mother by leaving "a recording device running in [their] personal area or bedroom" to document her alleged physical abuse and substance use.

Mother opposed Father's requests for relief and submitted a declaration denying the claims in his declaration. Regarding Father's claim that Mother physically abused him, Mother asserted that "at the time of the hearing, [Father] will have zero evidence" to establish this "utterly baseless" claim. As to Father's claims of substance abuse, Mother stated she had not consumed alcohol in two years and did not smoke marijuana during pregnancy. Mother highlighted in her declaration that Father admitted to secretly recording her, which Mother maintained was "a criminal offense in California." Mother acknowledged she once threw a metal wallet but explained that Father threw it at her first and that she threw it back in a "not forceful" manner that did not touch Father or go "anywhere near" Child.

An evidentiary hearing began on August 7, 2024. Father appeared on his own behalf; Mother appeared with counsel. The hearing was not reported. According to the minute order, Mother and two witnesses testified

3

on her behalf, and the court admitted 11 of the exhibits referenced in Mother's original declaration. Father also testified and the court admitted one flash drive and, subject to resolving an objection by Mother, one transcript of a recording. After nearly three hours, the court continued the hearing.

At the continued hearing, which also was not reported, Mother and Father each testified again. The trial court admitted a lab report submitted by Mother to establish her sobriety. The court heard closing arguments and took the matter under submission.

The court later issued a nearly three-page order granting Mother's request for a DVRO against Father, granting sole legal and physical custody of Child to Mother (with Father having visitation rights), and denying Father's request for a DVRO.

As to Mother's request for a DVRO, the court found that Mother met her burden to prove that Father engaged in abuse consisting of (1) "Harassment through abusive text messages" of a sexual nature; (2) "Stalking behavior in repeatedly secretly recording [Mother], going through her phone, and going through her social media accounts"; and (3) destroying Mother's emotional calm by" (a) "threatening to kill himself and have her listen," (b) "threatening to take [Child]," (c) "threatening to tell [Mother]'s friends and family about her" personal information, and (d) "essentially evicting [Mother] and [Child]." The court expressly found "the testimony of [Mother] to be credible" and "the testimony of [Father] not to be entirely credible."

As to Father's requests for relief, the trial court found he did not meet his burden to prove that Mother abused him. The court first found that the alleged "transgressions" by Mother did not constitute abuse. The court also

4

found "there was insufficient evidence to prove" Father's claim that Mother "abus[ed] drugs and alcohol." The court expressly credited Mother's claim "that she has been sober since 2022." In addition, the court found "there was insufficient evidence to prove" that Mother physically abused Father. As to this finding, the court excluded from evidence a secret recording by Father in which Mother allegedly admitted to having physically abused him.[2] Specifically addressing the metal wallet incident, the court found "there was insufficient evidence to confirm [Father]'s claim" of abuse.

On October 3, 2024, the trial court ordered Father to pay monthly guideline child support and to pay $5,000 in attorney fees to Mother.

## III. DISCUSSION

### A. Father's Motion to Augment the Record with Materials Not Before the Trial Court Is Denied

Father moves to augment the appellate record to include cellphone photos/video and text/social media messages that he contends show Mother perjured herself in the trial court by claiming to be sober and by denying she physically abused Father.[3] Father characterizes these materials as "new evidence that was not part of the original record."

Father's "request to augment with a new record is inappropriate. 'Augmentation does not function to supplement the record with materials not

---

[2]    The video was lodged with the trial court but neither party included it in the appellate record.

[3]    Father also seeks to augment the record to include the trial court's challenged ruling. This request is denied because the ruling is already in the appellate record. (See *People v. Briggs* (1962) 58 Cal.2d 385, 406 [augmentation was properly denied where the material "was already before the appellate court as a portion of the record"]; *Holland v. Jones* (2012) 210 Cal.App.4th 378, 382, fn. 1.)

5

before the trial court.  [Citations.] . . . Rather, normally "when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered." ' " (*In re K.M.* (2015) 242 Cal.App.4th 450, 455–456, quoting *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3; see *In re Marriage of Forrest & Eaddy* (2006) 144 Cal.App.4th 1202, 1209 ["augmentation may be used only to add evidence that was mistakenly omitted when the appellate record was prepared; the record cannot be 'augmented' with material that was not before the trial court"].)  Because Father acknowledges the materials he seeks to add are "new" and were not before the trial court, they are not properly subject to augmentation.

Additionally, although appellate courts are authorized to receive new evidence and make factual findings on appeal (see Code Civ. Proc., § 909), that " 'authority should be exercised sparingly' " and only under " 'exceptional circumstances.' " (*In re Zeth S.* (2003) 31 Cal.4th 396, 405, italics omitted.) Father has identified no exceptional circumstances here.

Accordingly, we deny Father's motion to augment the record.

## B.  Substantial Evidence Supports the Trial Court's Orders

Father challenges the sufficiency of the evidence supporting the trial court's orders.  With respect to the court's denial of his requests for relief, Father asserts the court erred by relying on Mother's perjured "testimony denying any physical abuse and substance abuse," the falsity of which is "proven by video evidence and other undisputed facts or evidence."  As to the court's granting of Mother's requested orders, Father maintains the court erred by accepting Mother's perjured testimony and misrepresentation of "text[] messages to establish her case that [Father] was abusive."  Because Father challenges the trial court's assessment of the evidence, we review the

6

court's ruling for substantial evidence, "meaning ' "whether, on the entire record, there is any substantial evidence, contradicted or uncontradicted," supporting the trial court's finding.' " (*Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1143.)  Father has not provided an appellate record sufficient to show error under this standard.

"[I]t is a fundamental principle of appellate procedure that a trial court judgment [or order] is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment [or order].  [Citations.]  'This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.'  [Citations.] . . . ' "[I]f the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed." '  [Citation.]  'Consequently, [the appellant] has the burden of providing an adequate record.  [Citation.]  Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].' " (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 (*Jameson*).)

"Generally, appellants in ordinary civil appeals must provide a reporter's transcript at their own expense" or a settled statement of the proceedings.  (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 186 (*Foust*); see *Jameson, supra,* 5 Cal.5th at p. 608; Cal. Rules of Court,[4] rule 8.137(b)(1)(A).)  "Where no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be *conclusively presumed correct* as to *all evidentiary matters*.  To put it another way, it is presumed that the unreported trial testimony would demonstrate the absence of error.  [Citation.]  The effect of

---

[4]     All further rule references are to the California Rules of Court.

this rule is that an appellant who attacks a judgment but supplies no reporter's transcript will be precluded from raising an argument as to the sufficiency of the evidence." (*In re Estate of Fain* (1999) 75 Cal.App.4th 973, 992 (*Fain*); accord, *Robinson v. Gutierrez* (2023) 98 Cal.App.5th 278, 283; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2025) ¶8:47; see *Foust*, at p. 186 [noting that "appellate courts have refused to reach the merits of an appellant's claims because no reporter's transcript of a pertinent proceeding or a suitable substitute [such as a settled statement] was provided"].)

These rules of appellate procedure apply whether an appellant is represented by counsel or is self-represented. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247; *Bianco v. California Highway Patrol* (1994) 24 Cal.App.4th 1113, 1125–1126.)

Father did not provide us with a reporter's transcript of the evidentiary hearings, nor did he provide us with a settled statement. Consequently, we conclusively presume the testimony at the hearings supported the trial court's factual findings that Father failed to show that Mother abused him and that Mother met her burden to show that Father abused her. (See *Fain*, *supra*, 75 Cal.App.4th at p. 992.) Father therefore has not met his burden as the appellant to show the trial court erred.

To the extent Father complains that Mother committed perjury, "[c]redibility is an issue of fact for the finder of fact to resolve [citation], and the testimony of a single witness, even that of a party, is sufficient to provide substantial evidence to support a finding of fact." (*Doe v. Regents of University of California* (2016) 5 Cal.App.5th 1055, 1074; see *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.) It is not our role to reweigh the evidence or reevaluate the trial court's credibility determinations. (*Foust*, *supra*,

198 Cal.App.4th at p. 188.)  Although Father maintains that the falsity of Mother's testimony is "proven by video evidence and other undisputed facts or evidence," he fails to specifically identify that evidence or direct us to it in the appellate record.

## C.  The Trial Court Did Not Err by Excluding a Secretly Recorded Video

Father argues the trial court erred by excluding a secretly recorded video of a conversation between Father and Mother in which Mother allegedly "admit[ed] to striking [Father]."  " 'We review evidentiary rulings for abuse of discretion.' "  (*In re Marriage of M.P. and M.C.* (2025) 116 Cal.App.5th 1096, 1107.)  Father has not shown an abuse of discretion.

The trial court's ruling gives the following description of the proceedings regarding the challenged recording:  "An audio recording was played but not admitted as the court found that the exception to the Penal Code did not apply.  The audio recording was of the argument/incident the day after [Father] packed up their belongings and their child and tried to leave.  The court finds that [Father] was intentionally recording [Mother] in an attempt to portray her distress about him taking their child as abuse and threats against him as well as trying to get her to admit that she hit him."

Although the trial court did not specify which provisions of the Penal Code it was relying on, we suspect it was Penal Code section 630 et seq.,[5] known as the "California Invasion of Privacy Act."  (*Flanagan v. Flanagan* (2002) 27 Cal.4th 766, 768.)  "Section 632 makes it a criminal offense to use a device 'to eavesdrop upon or record' a 'confidential communication' without 'the consent of all parties' to the communication.  (§ 632, subd. (a).)  Except to

---

[5]      Statutory references are to the Penal Code unless otherwise indicated.

prove a violation of section 632 itself, evidence obtained in violation of the section 'is not admissible in any judicial, administrative, legislative, or other proceeding.' (§ 632, subd. (d).) Section 633.5 provides an exception according to which one party to a confidential communication is permitted to record the communication secretly 'for the purpose of obtaining evidence reasonably believed to relate to the commission by another party to the communication' of certain crimes, including 'any felony involving violence against the person.' " (*In re Trever P.* (2017) 14 Cal.App.5th 486, 490.)

In light of this framework, it appears the trial court found that section 633.5's evidence-gathering exception to the general rule of inadmissibility did not apply because Father did not reasonably believe the recording would relate to physical abuse by Mother, but rather, that Father "was intentionally" manipulating Mother "to get her to admit that she hit him." Father does not address this aspect of the trial court's ruling. Thus, to the extent the recording constituted a confidential communication, the trial court properly excluded it under section 632, subdivision (d). (See *Fleming Distribution Co. v. Younan* (2020) 49 Cal.App.5th 73, 84, fn. 8 ["it is the appellant's burden to affirmatively demonstrate error with respect to all of the bases upon which the trial court rendered its decision"].)

Father contends the recorded conversation was not a confidential communication for two reasons. First, he asserts "the recording was lawful" under "federal and California law . . . because [Father] was a party to the conversation" and, therefore, "the communication was not confidential." But section 632 expressly requires "the consent of *all* parties," not just one. (§ 632, subd. (a), italics added; see *Kearney v. Salomon Smith Barney, Inc.* (2006) 39 Cal.4th 95, 104.)

Second, Father asserts the communication was not confidential because "the video was recorded in a public parking lot, in [Father]'s vehicle, with a missing rear windshield, where no reasonable expectation of privacy exists." Father cites nothing in the appellate record to support this characterization of the circumstances under which he made the recording.  An appellant who fails to provide proper citations to the record to support appellate claims may be deemed to have forfeited those claims.  (*Estates of Collins & Flowers* (2012) 205 Cal.App.4th 1238, 1251, fn. 11; rule 8.204(a)(1)(C) [the appellant's brief must "support any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"].)

Further, even if Father accurately characterized the circumstances of the recording, he cites no authority to support his conclusory assertion that Mother lacked a reasonable expectation of privacy merely because the vehicle lacked a rear window and was in a public parking lot.  (See *Howard v. American National Fire Ins. Co.* (2010) 187 Cal.App.4th 498, 523 ["Conclusory assertions of error are ineffective in raising issues on appeal."]; rule 8.204(a)(1)(B) ["Each brief must:  [¶] . . . [¶]  support each point by argument and, if possible, by citation of authority"].)  For example, the testimony at the evidentiary hearings may have established that the parking lot, although public, was remote and empty at the time of the communication, thus affording Mother a reasonable expectation of privacy.  Indeed, in the absence of a reporter's transcript of the evidentiary hearings, we presume the testimony established facts necessary to support the trial court's ruling.  (See *Fain, supra,* 75 Cal.App.4th at p. 992.)  Father therefore has not provided a factual or legal basis to overcome the trial court's implicit finding that he secretly recorded a confidential communication.

Accordingly, Father has not shown that the trial court abused its discretion by excluding the secretly recorded video.

## IV.  DISPOSITION

The orders are affirmed.  Mother is entitled to recover her costs on appeal.


RUBIN, J.

WE CONCUR:


O'ROURKE, Acting P. J.


DO, J.